IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CARMEN DE LOURDES CAEZ**<br><br>Plaintiff<br><br>Vs.<br><br>**UNIVERSIDAD DE PUERTO RICO LUIS LUGO, JANE DOE** and their conjugal partnership, **HARRY HERNANDEZ, SUSAN ROE** and their conjugal partnership, **RAUL CASTRO, JANE DOE**, and their conjugal partnership, **WALTER MUCHER, SUSAN ROE,** and their conjugal partnership, **GLORIVEE ROSARIO, JOHN DOE,** and their conjugal partnership, **IRMANNETTE TORRES, SAMUEL ROE,** and their conjugal partnership, **CORPORATION ABC, INSURANCE COMPANY DEF,** and **JOHN DOE**<br><br>Defendants | CIVIL NO. 20-<br>FOR:<br>    DISCRIMINATION<br>    EMPLOYMENT<br>    RETALIATION   FOR SEXUAL HARASSMENT<br>42 USC 1983<br>PLAINTIFF DEMANDS<br>    TRIAL BY JURY |

## COMPLAINT

TO THE HONORABLE COURT:

**COMES NOW** Plaintiff Carmen de Lourdes Caez through her undersigned attorneys, and respectfully **ALLEGES** and **PRAYS** as follows:

### I. JURISDICTION

1. This suit is brought and jurisdiction lies pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq; 28 U.S.C. 1331 and 1343; and under the Civil Rights Act of 1991. This Honorable Court's jurisdiction over state law claims is invoked pursuant to the doctrine of pendent or supplemental jurisdiction.

2. The following local laws are invoked: Law 100 of June 20, 1959, as amended, 29 Laws of P.R. Anno. 146 et seq. ("Law 100"); Law 17, 29 Laws of P.R. Anno. 155 et seq.,

1

Articles 1802 and 1803 of the Civil Code of Puerto Rico, and Law 115.

3. The proper venue for this case lies in this Court, as the defendants are all residents of Puerto Rico, and the causes of action took place in Puerto Rico.

4. Plaintiff has fulfilled all the procedural perquisites necessary to filing this lawsuit, including obtaining a right to sue letter from the Equal Employment Opportunity Commission.

## II. PARTIES

5. Plaintiff Carmen de Lourdes Caez is of legal age, a United States citizen, single, and a resident of Puerto Rico. At all times relevant to the instant Complaint, plaintiff was an individual protected by the laws invoked in this Complaint.

6. Defendant, Universidad de Puerto Rico is an employer with more than 500 employees that intentionally retaliated against Ms. Caez for reporting that a supervisory professor had sexually harassed her.

7. Defendant Professor Harry Hernández, the department director was at all relevant times an employer as defined by Puerto Rico law.

8. Defendant Professor Luis Lugo was, at all relevant times, an employer as defined by Puerto Rico law.

9. Defendant Professor Raúl Castro was, at all relevant times, an employer as defined by Puerto Rico law.

10. Defendant Professor Walter Mucher was, at all relevant times, an employer as defined by Puerto Rico law.

11. Defendant Glorivee Rosario, interim director, was, at all relevant times, an employer as defined by Puerto Rico law.

12. Defendant Professor Irmannette Torres, interim dean, was, at all relevant times, an employer as defined by Puerto Rico law.

13. John Doe is a person, currently unknown, who may have responsibility for the facts set out in this Complaint.

14. Corporation ABC is any entity that may have responsibility for the facts set forth in this Complaint.

15. Insurance Company DEF is any insurance company that may have issued a policy covering the events set forth in this Complaint.

**THE FACTS**

16. Professor Caez was hired by the la Universidad de Puerto Rico as a profesor in January 2001.

17. Professor Caez performed her work in an exemplary fashion.

18. On March 17. 2016, Professor Caez was meeting with Defendant Professors Lugo y Hernández, working.

19. Professor Hernández left the meeting, and Professor Lugo took advantage of his absence, and grabbed Professor Caez's arms, saying, could I give you a kiss.

20. Before Professor Caez could answer, Professor Lugo kissed her on the cheek.

21. Then Professor Lugo told Professor Caez that he wanted to give her a kiss on the lips and tried to do so.

22. Professor Caez tried to move away from Professor Lugo, and he said, "relax, its Social Friday [an expression in Puerto Rico, that refers to Friday being the day before the weekend, when people can loosen up.]

23. Colloquially, Social Friday's loosening up can refer to men and women

becoming intimate.

24. After Professor Caez resisted the kiss on the lips, Professor Hernández returned to the office.

25. Professor Lugo acted as if nothing had happened.

26. Professor Caez left the office and entered the office of the Humanities Departament.

27. Professor Caez was nervous, trembling.

28. She entered the department office and ran into a secretary, who she told about the assault.

29. The secretary told Professor Caez to wait so that she could speak to the director.

30. Professor Caez just wanted to leave.

31. Professor Caez went home, and, at 6:00 pm, Defendant Hernández called her.

32. Professor Caez told Professor Hernández what had happened.

33. Professor Hernández was alarmed and stated that he would speak to Professor Lugo on Monday, March 20.

34. Professor Caez contacted two members of the Personnel Committee of the Universidad de Puerto Rico during the weekend. They told her that they were sorry it happened, and nothing more.

35. Monday March 20, 2016 Defendant Hernandez spoke with Professor Lugo, according to what Defendant Hernández told Professor Caez.

36. Defendant Hernández informed Professor Caez that Professor Lugo admitted that he had tried to kiss Professor Caez.

37. Defendant Hernández asked Professor Caez to write a letter, explaining what had happened because he had spoke to the then Dean, Defendant Raúl Castro, and that was what the procedure required.

38. Professor Caez delivered the letter on April 5, 2016.

39. It was difficult for Professor Caez to draft the letter because doing so made her remember her feeling of disgust caused by the assault.

41. Two week later, Defendant Hernández called Professor Caez to tell her that Defendant Castro indicated to Hernández that he should resolve the matter at the department level.

42. Professor Caez could not believe that Defendant Castro was minimizing Professor Lugo's sexual assault of her and refusing to investigate, but, at that time, she remained silent.

43. Professor Caez was afraid given her position as a contracted professor and not a regular employee with tenure.

44. On information and belief, it is Defendants' policy to kept professors under contract rather than give them tenure so that they feel intimidated without the right to due process.

45. No UPR official, including, but not limited to the Personnel Committee, intervened in any way to provide due process to Professor Caez.

46. In mid-May, Professor Emmanuelli, a faculty member, approached Professor Caez's office to tell her that she should not feel bad about what had happened and that she should understand that Professor Lugo was attracted to Professor Caez and that he did not know how to express his feelings.

5

47. Professor Emmanuelli also told Professor Caez that if Professor Caez liked, the three of them could meet to resolve the "misunderstanding."

48. Professor Caez notified Defendant Hernández about Professor Emmanuelli's conduct, and the director told Professor Caez that Professor Emmanuelli should not have intervened in that way and that Professor Caez should ignore her.

49. On information and belief, Defendant Hernández had not even told Professors Lugo and Emmanuelli that they should not speak about the sexual assault as if it were acceptable conduct.

50. To the contrary, Defendant Hernández made Professor Caez responsible for handling the situation.

51. A few days later, Professor Caez received a message from Professor Lugo in which he said that such a long-standing friendship should not end because of what had happened.

52. Professor Caez called Defendant Hernández by phone and told him that Professor Lugo had sent her that message and that she did not want Professor Lugo to come near her.

53. Without recognizing that the message was another admission that the assault occurred, Defendant Hernández met with the two of them and told them that the situation was very delicate and that Professor Caez had asked him to tell Professor Lugo to leave her alone.

54. Thus, Defendants did not investigate Professor Lugo for his sexual assault nor was he sanctioned for lying in the pre-investigation which occurred to determine if a formal investigation was necessary.

55. As Defendants intended, Professor Caez felt humiliated and at the same time thought that since she was a contract professor, if she insisted on her complaint that her job would be at risk.

56. Defendants forced Professor Caez to put up with a silence her pain resulting from Professor Lugo's sexual assault and the lack of seriousness – in violation of Title VII, Law 100, Law 17, among other, with which Defendants treated her complaint.

57. Professor Lugo's sense of impunity was so severe that in the second semester of 2017 he invited Professor Caez to go to lunch with him, knowing that that invitation was an undesired approach.

58. In the semester starting in August 2017, the Personnel Committee's composition changed.

59. Therefore, on November 20, 2017, Professor Caez decided to take the risk – which how Defendants made her feel – to tell Professor Yamila Bauzá and Professor Casanova so that they could provide her guidance.

60. Professor Caez was not able to do so earlier because of the academic recess caused by Hurricane María.

61. Professor Bauzá and Professor Casanova explained to Professor Caez that the UPR has a protocol and a sexual harassment policy, which were not followed in her case.

62. Professor Caez decided that it was time to try again to denounce what had happened.

63. Professor Casanova spoke to the current department director, Defendant Dr.

Walter Mucher to ask if he knew about the assault.

64. Next the department secretary asked Professor Caez for a copy of the letter she sent on April 4, 2016.

65. On December 18, 2017, Professor Caez delivered a sworn statement as required to initiate the UPR's sexual harassment protocol to the Department of Human Resources, stating the details of the assault yet again.

66. The investigative Process was finally initiated, and, as a result, the UPR found that Defendant Lugo had sexually assaulted Professor Caez.

67. Defendants punished Defendant Lugo by suspending him from work and pay for six months, beginning in January 2019.

68. In August 2018 the UPR informed Professor Caez that it was not going to renew her contract, with the pretext of lack of funds.

69. Professor Caez had worked for the UPR for 17 years and 5 months without a complaint against her of any kind.

70. Funding existed for all the other professors, including many with less years of service.

71. Funding was only lacking for the professor who had complained about the sexual harassment, the sexual assault of Defendant Lugo.

72. As Professor Caez had feared, Defendants retaliated against her for exercising her rights.

73. Professor Caez approached Defendant interim Rector Glorivee Rosario, and Defendant Irmannette Torres, interim dean, who told her that they did not even have to listen to her because she had no relationship with the UPR any more.

74. Professor Caez was destroyed by their reaction.

75. As a result of this situation, Professor Caez approached various governmental agencies.

76. Among other places, Professor Caez went to the office of then State Senator Zoé Laboy.

77. Senator Laboy scheduled hearings at the Cayey campus of the Universidad de Puerto Rico.

78. Professor Caez testified in public hearings about the discriminatory treatment to which she had been subjected by Defendants.

79. There was significant press coverage of the public hearings.

80. UPR officials, including Professors Hernández and William Rios, altered official documents to justify the cancellation of Professor Caez's contract.

81. Due to Professor Caez's complaints, President Jorge Haddock initiated an investigation from the presidency.

82. As a result of that investigation, the president determined that the university's protocols had been violated.

83. There were recommendations of sanctions for Professor Harry Hernandez and Professor Raul Castro that have not been not implemented.

84. Nonetheless, the investigation was incomplete because of the accusations of retaliation were never investigated.

85. Moreover, the investigation determined that Professor Caez rejected a reasonable accomodation, when it was Professor Caez who requested an accommodation that was never afforded her.

## FIRST CAUSE OF ACTION

### (42 U.S.C. § 1983 First Amendment)

86. Plaintiff incorporates the preceding paragraph as if re-alleged in full.

87. Since Defendants retaliated against Professor Caez for exercising her right to free expression about a matter of public importance by not renewing her contract because of her complaint.

88. Defendant UPR has policies and procedures which intentionally or not discriminated against Professor Caez, for exercised her right to free expression.

89. As a result of the above, Professor Caez has the right to be paid by Defendants the following damages:

a) Lost income during the time the contract was cancelled, which exceed $50,000.00 plus interest and any other benefit provided by law.

b) Emotional damages for the retaliation in violation of the First Amendment for an amount not less than $100,000;

c) Punitive damages in Accord with federal law for violation of the First Amendment.

d) Attorneys' fees pursuant to 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION

### ( 42 U.S.C. § 1983 XIVTH Amendment)

90. Plaintiff incorporates the preceding paragraphs as if re-alleged in full.

91. Because defendants failed to provide or did not use procedures that addressed Professor Caez's complaint, she suffered emotional harm due to working in a hostile environment without hope of a way for an amount of not less than $500,000.

10

92. Defendants are also liable for punitive damages for violating the 14th Amendment in an amount of not less than $500,000.

93. The UPR should be enjoined to implement policies and procedures that work to address sexual harassment.

94. Defendants should pay attorneys' fees in accord with 42 U.S.C. § 1988.

### THIRD CAUSE OF ACTION

### TITLE VII RETALIATION FOR REPORTING A HOSTILE ENVIRONMENT CREATED IN REPRISAL FOR REFUSING HER SUPERVISOR'S SEXUAL ADVANCE

95. Plaintiff incorporates as if realleged the preceding paragraphs with the same force and effect as if herein set forth.

96. Because defendant created a hostile environment, and harassed Professor Caez in retaliation for her complaints about the hostile environment it was illegal and discriminatory and defendant made the decision to harass and eventually not renew Professor Caez's contract without just cause, defendant UPR violated Title VII with knowing and reckless disregard of said Act's proscriptions.

97. The defendants engaged in policies and practices which willfully, or in the alternative unwillfully, discriminated against the plaintiff, Professor Caez on the basis of her sexual harassment complaint and her complaints about the hostile environment created by the UPR.

98. Professor filed timely charges of discrimination with the Equal Employment Opportunity Commission and has met all administrative prerequisites for bringing this action.

99. The UPR employs over 500 employees.

100. The Equal Employment Opportunity Commission took jurisdiction of the case,

and issued a right to sue letter, which Ms. Caez received on October 22, 2019.

101. Plaintiff is within the protected group covered by the Civil Rights Act of 1964.

102. As a result of the before mentioned, Professor Caez is entitled to be paid by defendant UPR the following damages:

    a) Compensatory damages for the emotional and physical harm suffered;

    b) backpay and front pay;

    c) Punitive damages;

    d) Attorney fees;

    e) and any other benefits allowed by law.

103. All of the previously mentioned acts of the defendants violated Title VII, and the other federal laws previously cited. As a result, Professor Caez also asks this Honorable Court to order the UPR to grant her tenure, which means that she would be absolved of evaluations, which are used to continue reprisals.

## FOURTH CLAIM FOR RELIEF
### (LAW 100 - P.R.)

104. Plaintiffs incorporates the preceding paragraphs as if alleged in full.

105. Defendants' acts violate Law 100 intentionally, or, in the alternative, without intent, they discriminated against Professor Caez based on her gender.

106. As a result, Plaintiff has a right to be compensated as follows:

    a) Lost income in an amount not less than $50,000. That amount should be doubled by law.

    b) An amount not less than $2,500,000.00 for emotional damages and mental anguish. That amount should be doubled as the law requires.

    c) Any Other damages permitted by the law.

## FIFTH CAUSE OF ACTION

### ( Law 17 of April 22, 1988)

107.   Plaintiff re-alleges the preceding paragraphs in full.

108.   As a result of the aformentioned acts and omissions, Defendants have committed sexual harassment and inflicted emotional humiliation, harassment, and mental anguish to the Plaintiff in an amount in excess of $500,000.  Plaintiff has suffered enormously due to the discriminatory actions of Defendants. Any amount awarded should be doubled by law.

109.   In addition, Defendants should compensate Professor Caez for lost income for the failure to renew her contract in retaliation for her complaint. Such amount should be doubled by law.

## SIXTH CLAIM FOR RELIEF

### Violation of Puerto Rico Law 115, Retaliation for Reporting Violation of Puerto Rico Law to the Puerto Rico Department of Labor

110.   Plaintiff incorporates as if re-alleged the preceding paragraphs with the same force and effect as if herein set forth.

111.   In retaliation for Professor Caez's reporting Professor Lugo's acts of sexual harassment and creation of a hostile environment to the Puerto Rico Senate, the UPR failed to renew her contract.

112.   The UPR's violation of Puerto Rico Law 115 has caused Professor Caez both psychological and physical harm as well as the economic damages in an amount exceeding $1,000,000, which sum is to be doubled as a sanction for the violation of Law 115.

## TRIAL BY JURY

113.    Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff very respectfully asks this Court to grant the relief sought in this Complaint and order Defendants to

a)    Pay the lost income of more than $50,000.00 doubled by law and any other benefit permitted in law;

b)    Pay for emotional damages for the retaliation under the First and Fourteenth Amendments, Title VII, and Law 17 in an amount not less than $500,000;

c)    Punitive damages of not less than $500,000;

d)    Attorneys' fees pursuant to 42 U.S.C. § 1988 and Title VII;

e)    require the Universidad de Puerto Rico to implement effective policies and procedures for the investigation of sexual harassment, with warnings about the consequences involved and protection for victims that take the risk of filing a complaint;

e)    and any other remedy allowed by law.

**RESPECTFULLY SUBMITTED**

In San Juan, Puerto Rico this 9th of January 2020.

/s/Jane Becker Whitaker
USDCPR 205110
**BECKER VISSEPO**
P.O Box 9023914
San Juan, PR  00902-3914
Teléfono (787) 945-2406
jbw@beckervissepo.com

14